Filed 9/21/15  In re Michael S. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re MICHAEL S., a Person Coming Under the Juvenile Court Law.<br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>NICOLE S.,<br><br>      Defendant and Appellant. | B263355<br><br>(Los Angeles County<br>Super. Ct. No. CK18066) |

APPEAL from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel for Plaintiff and Respondent.

Nicole S. (mother) appeals from orders of the juvenile court (1) denying her Welfare and Institutions Code section 388 petition to have her son Michael H. returned to her care, or, alternatively, to grant her reunification services and increase her visitation with Michael, and (2) terminating her parental rights.[1] We find no abuse of discretion, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has six children: Anthony S. (born Jun. 1994), Jasmine C. (born Sep. 1996), Destiny C. (born Feb. 1998), Selena L. (born Jan. 2002), Nicole S. (born May 2003), and Michael H. (born Feb. 2013). This appeal relates to the juvenile court's orders regarding Michael only.

## I.

## Detention

In April 2014, the Department of Children and Family Services (DCFS) received a report that mother was using drugs and leaving her infant, Michael, alone with a parolee and fellow drug user. DCFS received a subsequent report that mother had been arrested in April 2014, and that sheriff deputies had found methamphetamine in her car. Michael was in the car with mother at the time of the arrest. Regarding her methamphetamine use, mother told the deputies, " 'I just relapsed again the other day, I'm trying to quit.' "

Mother told a children's social worker (CSW) that she had successfully completed an eight-month substance treatment program two years earlier and had been drug-free ever since. However, she admitted to recently relapsing because of her mother's terminal illness.

Mother has a lengthy criminal history of 26 arrests for mostly drug-related offenses. Michael's five older siblings became dependents of the juvenile court and were ultimately adopted due to mother's substance abuse and failure to comply with court-ordered drug counseling and testing. Mother agreed that this time she would need to attend an inpatient treatment program to become drug-free and to regain custody of

---

[1]    All further statutory references are to the Welfare and Institutions Code.

2

Michael. She requested that DCFS place her son with appropriate relatives in the interim. Michael was placed in the care of Joy C., an extended family member and former foster parent, on May 20, 2014.

In reports dated May 27, 2014, DCFS recommended that Michael remain detained because there was a "very high" risk he would suffer future abuse or neglect. Further, due to mother's extensive history of drug abuse and her failure to reunify with her older children, DCFS requested that a petition be filed on Michael's behalf and that Michael remain detained with Joy and her husband. Finally, DCFS recommended that no reunification services be offered to mother.

At a detention hearing on May 27, 2014, the court found a prima facie case for detaining Michael. The court ordered DCFS to supply mother with referrals for a drug rehabilitation program with random testing and to provide her with monitored visits at least two to three times a week for two to three hours each.

## II.

## Petition

DCFS filed a juvenile dependency petition on May 27, 2014. As subsequently amended, the petition alleged: (b-1) Mother had a chronic and unresolved history of substance abuse and was a current user of methamphetamine. Mother's illicit drug use placed Michael at risk of harm and impeded her ability provide him with regular care and supervision.

## III.

## Jurisdiction and Disposition

A.      *Jurisdiction and Disposition Report*

The jurisdiction and disposition report, dated June 25, 2014, said mother was currently incarcerated at Century Regional Detention Center. She had been arrested on April 6, April 23, and June 9, 2014, for possession of controlled substances, but her largely drug-related criminal history dated back to 1998. Her parole had been revoked when she tested positive for methamphetamine on June 9, 2014.

3

Although mother claimed she had completed an eight-month drug treatment program while incarcerated in Bakersfield, she did not provide DCFS with a copy of her certificate of completion. Further, on at least two prior occasions, mother had either failed or refused to attend drug rehabilitation programs made available to her. Accordingly, DCFS advised the court that although mother stated she had changed and was willing to comply with court orders, she "continues to battle . . . her long chronic substance abuse . . . and she lacks the conflict resolution skills and she resorts to using drugs when things happen in her life." DCFS recommended that Michael remain detained based on mother's drug history and current drug use, her failure to make appropriate arrangements for Michael's care, her failure to reunify with his siblings, and her incarceration.

On May 27, 2014, the court found George H. to be Michael's alleged father. However, George H. consistently denied fathering Michael and did not appear to have any interest in becoming involved in Michael's life.

Based on the above-mentioned information, DCFS recommended that the court bypass reunification services, that Michael be suitably placed, and that the court order permanent placement services for Michael.

### B. Hearing

On June 25, 2014, the court sustained paragraph b-1 of the petition and found that Michael was a person described by section 300, subdivision (b). It ordered DCFS to provide a supplemental report addressing mother's progress and whether there was any change in DCFS's recommendations.

### C. Interim Review Report

DCFS filed an interim review report dated July 30, 2014. It said that mother remained incarcerated and that DCFS had not been able to verify her compliance with the drug court program. DCFS advised the court, again, that it was in Michael's best interests that mother not be offered reunification services. It noted that Michael was thriving in the home of his current caregivers, who wished to adopt him.

A disposition hearing was held on August 4, 2014. The court found by clear and convincing evidence that Michael's placement was necessary and appropriate, and it declared Michael a dependent child pursuant to section 300, subdivision (b). The court declined to order reunification services to mother pursuant to section 361.5, subdivisions (b)(10) (parent failed to reunify with child's sibling), (b)(11) (parental rights over a sibling have been terminated), and (b)(13) (the parent has a history of extensive, abusive, and chronic use of drugs and has resisted prior court-ordered treatment for this problem on at least two prior occasions). The court then ordered DCFS to provide permanent placement services for Michael, and it set a hearing pursuant to section 366.26 to terminate mother's parental rights.

## IV.

### Six Month Review and Section 366.26 Report

DCFS filed a status review report and a section 366.26 report, both dated December 1, 2014. The status review report stated that Michael was thriving in the home of his caregivers. According to both mother and the caregivers, Michael was developmentally on track and was meeting many developmental milestones such as walking without assistance and following simple commands. Michael had no chronic illnesses or health issues. Mother was regularly visiting with Michael at the drug treatment center where she was living and the visits were reported to be going well. Mother told the CSW she "wants to learn how to remain sober and become a better person in order to fit in society," and she said she planned to comply with her current in-patient program to help her meet these goals. DCFS recommended that Michael remain a dependent child of the court and that he continue to receive adoption planning services.

The section 366.26 report said that Michael had been living with his caregivers since May 21, 2014, and that he appeared to be getting appropriate care and was doing well. The caregivers remained committed to adopting Michael and were currently in the process of completing an adoption application. DCFS stated that at the time of the writing of the report, mother "continues to have unresolved substance abuse issues" and remained incapable of providing Michael with a safe, drug-free home environment.

5

DCFS recommended that the court identify adoption as a permanent placement goal for Michael.

On December 1, 2014, the court continued the section 366.26 hearing to March 2, 2015. The hearing subsequently was continued again to April 2, 2015.

**V.**

**Mother's Section 388 Petition**

On February 13, 2015, mother filed a section 388 petition asking that Michael be returned to her care or, in the alternative, that she be granted reunification services and increased visitation. Mother asserted that she had been enrolled in Shields For Families' residential treatment program for four months, after which she enrolled in outpatient treatment. The outpatient treatment program required her to attend treatment five days a week from 9:00 a.m. to 3:30 p.m., and to submit to daily urinary analysis. According to the program manager, mother had complied with all of the program's rules and regulations. The court set the section 388 petition for hearing.

On February 25, 2015, in response to mother's section 388 petition, DCFS reported that Michael was bonded to his caregivers and was continuing to thrive in their care. He was exhibiting age appropriate behaviors, although he had some developmental and speech delays. The caregivers said helping Michael catch up developmentally was their priority. They had continued to voice their commitment to adopting Michael and helping him receive any available support services to aid his development.

DCFS reported that since enrolling with Shields For Families, mother had had eight negative drug tests and no positive tests. She was reported to interact well with Michael during weekly monitored visits. Nonetheless, DCFS continued to recommend that reunifying with mother was not in Michael's best interests. DCFS noted that when mother was asked what her care plan for Michael would be while she was enrolled in a full outpatient program, mother said " 'I don't know yet.' " Mother admitted to the CSW that "the longest she has ever raised a child was about one year before [the] child was removed" due to her substance abuse. Further, at the time of the petition, mother had

6

been sober for only about six months, "and that was only due to an arrest and subsequent order to enter a drug program."

## VI.

## April 2015 Status Review Report

DCFS filed a status review report dated April 2, 2015. It reported that Michael appeared well bonded to his caregivers, noting that during the CSW's visits, he would hold on to his caregiver's leg and reach out to her to be carried or held throughout his play. His caregivers continued to actively participate in multiple services aimed at helping him achieve his targeted developmental milestones. Michael was regularly visiting mother at Shields For Families, and visits were reported to have gone well.

DCFS provided an addendum report dated April 2, 2015. It informed the court that the adoption home study for Michael's caregivers had been completed and was approved on March 24, 2015. Thus, DCFS requested that the court proceed with termination of parental rights.

## VII.

## April 2, 2015 Hearing

The court held a contested section 388 and section 366.26 hearing on April 2, 2015. The parties stipulated that if called as a witness, the caregiver would testify that mother had been having regular monitored visits with Michael and that the visits were appropriate. Mother had requested lengthier visits, but DCFS had denied that request.

Mother's attorney argued that the section 388 petition should be granted because mother had completed a drug program, remained sober since the inception of the case, and regularly visited Michael. Michael knew mother and had a relationship with her. Counsel for Michael and DCFS disagreed, urging that in light of mother's long history of drug abuse, granting the section 388 petition was not in Michael's best interests.

The juvenile court denied mother's section 388 petition as not in Michael's best interests. The court explained to mother: "[Y]ou've got a very long history of drug addiction. You have not reunified with other children that have been in the system. The other children that have been in the system have also been adopted out. It was a slim

7

chance that you would be able to do this, but we decided to give you a chance, and it simply wasn't done in time to be able to reunify with this child." The court acknowledged the progress mother had made towards rehabilitation, but emphasized Michael's need for permanency. Further, in light of mother's lengthy history of drug abuse, the possibility of relapse is "very high still."

With regard to the section 366.26 petition, the court found by clear and convincing evidence that Michael was adoptable and that "it would be detrimental for the child to be returned to the parents and there's no exception applying in this case." It ordered parental rights terminated and Michael's custody and care transferred to DCFS for adoptive planning purposes.

Mother timely appealed.

## DISCUSSION

### I.

### Applicable Law

Section 388 is a device that allows interested parties to petition the court to change, modify, or set aside an earlier court order based on "any change of circumstance or new evidence." (§ 388, subd. (a)(1).) In other words, section 388 serves as an " 'escape mechanism' " to "accommodate the possibility that circumstances may change . . . that may justify a change in a prior reunification order." (*In re Marilyn H*. (1993) 5 Cal.4th 295, 309 (*Marilyn H*.).) The burden of proof is on the moving party "to show by a preponderance of the evidence both that there are changed circumstances or new evidence and that also a change in court order would be in the best interest of the child." (*In re D.B*. (2013) 217 Cal.App.4th 1080, 1089.) However, "[n]ot every change in circumstance can justify modification of a prior order"; the change of circumstance or new evidence must be of such significance that it requires modifying or setting aside the challenged order. (*In re A.A*. (2012) 203 Cal.App.4th 597, 612.) Further, "it is not enough for a parent to show *just* a genuine change of circumstances." (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 529 (*Kimberly F*.).) The parent must show that the requested change of court order would be in the child's best interests.

8

A ruling on a section 388 petition is within the sound discretion of the juvenile court and will only be disturbed if an abuse of discretion is clearly established. (*In re D.B.*, *supra*, 217 Cal.App.4th at p. 1089.) "An abuse of discretion occurs when the juvenile court has exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642, quoting *In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*).) However, " '[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272, quoting *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479); *Stephanie M.*, *supra*, at p. 318-319.) Therefore, " '[t]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " (*Stephanie M.*, *supra*, at p. 318).

## II.

## The Juvenile Court Did Not Abuse Its Discretion in
## Denying Mother's Section 388 Petition

Mother urges that the juvenile court abused its discretion in denying her section 388 petition because she "did everything she possibly could have done to change her circumstances." She emphasizes that having recognized the need for treatment in order to become a responsible parent, she successfully completed an inpatient program and advanced to a full-day outpatient program with daily drug testing. Further, since beginning treatment, she has never had a dirty test and was consistent with her visitation. Thus, mother argues that the juvenile court "had every reason to grant her change-of-circumstances petition."

While we applaud mother's efforts to overcome her drug addiction, to support a section 388 petition, the change in circumstances must be substantial. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 (*Ernesto R.*).) Mother's recent sobriety "reflects 'changing,' not changed, circumstances." (*Ibid.*, citing *Casey D.*, *supra*, 70 Cal.App.4th at p. 49.) Mother has a history of drug relapses, is in the early stages of recovery, and is still addressing a chronic substance abuse problem. (See *Ernesto R.*, *supra*, at p. 223;

9

*Kimberly F.*, *supra*, 56 Cal.App.4th at p. 531.)  Mother's completion of a drug treatment program, though commendable, is not a substantial change of circumstances.

Further, by simply focusing on her drug rehabilitation, mother fails to "explore the nature of the 'best interests' aspect of section 388." (*Kimberly F.*, *supra*, 56 Cal.App.4th at p. 529.)  Michael has been in the care of his current caregivers for nearly half his life and is bonded to them.  His caregivers have provided a nurturing environment and are committed to adopting him.  Granting a section 388 petition would delay selection of a permanent home and not serve Michael's best interests.  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 49 (*Casey D.*); *Ernesto R.*, *supra*, 230 Cal.App.4th at pp. 223-224.)  "Childhood does not wait for the parent to become adequate.  [Citation.]" (*Marilyn H.*, *supra*, 5 Cal.4th at p. 310.)

Further, mother did not demonstrate that she could care for Michael while she continued her drug treatment.  At the time of the petition, mother was participating in an outpatient program, which required that she attend classes five days a week from 9:00 a.m. to 3:30 p.m., and she could not provide DCFS with a child care plan for Michael.  Moreover, Michael's young age meant that he was too young to be able to protect himself if mother should relapse.  (*Casey D.*, *supra*, 70 Cal.App.4th at p. 49.)

Mother's sole contention with regard to Michael's best interests is that the "existing family unit" should be preserved.  While we agree that preserving existing families is important, when, as here, reunification services were terminated, "the focus shifts to the needs of the child for permanency and stability." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.)

While we acknowledge that section 388 is difficult for the moving party to meet in many cases, mother's failure in this regard is not based solely on her "pre-petition failures" as she alleges, but on the fact that she did not make an adequate showing that a modification of the prior order would be in Michael's best interest.  Thus, we find no merit to her claims that the juvenile court rejected her petition simply because it was "dead set against parental reunification."  As such, we find that the juvenile court did not abuse its discretion in denying her section 388 petition.  Further, because mother did not

demonstrate an independent basis for reversing the order terminating mother's parental rights, our conclusion is dispositive of mother's appeals from both the denial of her section 388 petition and the order terminating her parental rights.

## DISPOSITION

The orders of the juvenile court denying mother's section 388 petition and terminating her parental rights are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

JONES, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.